# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THOM TOBIN,<br>  Plaintiff<br><br>  v.<br><br>CHRISTIAN MCLEOD et al.,<br>  Defendants | No. 22 CV 7080<br><br>Judge Jeremy C. Daniel |

## MEMORANDUM OPINION AND ORDER

Plaintiff Thom Tobin filed suit against the City of Chicago, several members of the Chicago Police Department (the "Defendant Officers" and, together with the City of Chicago, the "City Defendants"),[1] Illinois Masonic Medical Center ("Illinois Masonic"), and two of its employees, Elizabeth Byrne and Katie Tselepis (together with Illinois Masonic, the "Hospital Defendants"), alleging constitutional violations under 42 U.S.C. § 1983 as well as state law *respondeat superior* and indemnification claims. R. 1. The City Defendants and the Hospital Defendants have each filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the Court denies the City Defendants' motion, R. 27, and grants the Hospital Defendants' motion. R. 37.

---

[1] The complaint identifies the Defendant Officers as: Christian McLeod, Alfaro Hector, Suen Kimball, Gregory Jacobson, Michael Perricone, Lawrence Herhold, Joel Roman, Johnathan Centeno, Joshua Pausha, Jay Wojtasik, Sherry Alvarez-Pena, Paul Kane, Chris Papioannou, and Timothy Drews. R. 1 ¶ 5.

## BACKGROUND[2]

On December 16, 2020, Plaintiff was asleep in his apartment when the Defendant Officers knocked on his front door. R. 1 ¶ 7. When Plaintiff opened the door, the Defendant Officers entered his apartment, pointed "AK-47 weapons" at his head, and ordered him to put his hands up. *Id.* ¶ 9. Plaintiff complied with the Defendant Officers' orders and put his hands over his head despite having a dislocated right shoulder. *Id.* ¶ 11. The Defendant Officers handcuffed Plaintiff's hands behind his back and brought him downstairs to an ambulance waiting outside. *Id.* ¶¶ 11-12.

Although Plaintiff refused medical treatment, the Defendant Officers transported him in a police vehicle to Illinois Masonic where Bryne and Tselepis signed a petition for his involuntary admission. *Id.* ¶¶ 12-14. Plaintiff remained in the custody of Illinois Masonic until his release on December 18th. *Id.* ¶ 15. Upon returning to his apartment, Plaintiff discovered that it had been searched by the Defendant Officers and left in disarray with all of his drawers and cabinets opened. *Id.* ¶¶ 16, 38. Plaintiff alleges that the Defendant Officers had neither an arrest nor search warrant. *Id.* ¶ 7.

Plaintiff brought an eight-count complaint against the City Defendants and the Hospital Defendants based on the above allegations. *See* R. 1. The first six counts arise under § 1983. Count I alleges that the Defendant Officers illegally seized and/or

---

[2] For purposes of this motion, the Court accepts as true Plaintiff's factual allegations and draws all reasonable inferences in his favor. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021).

falsely arrested Plaintiff without probable cause in violation of the Fourth Amendment. Count II alleges the Defendant Officers used excessive force in violation of the Fourth Amendment. Counts III and IV allege that the Defendant Officers failed to intervene to stop the underlying constitutional violations alleged in Counts I and II. Count V alleges that the Defendant Officers illegally searched Plaintiff's apartment in violation of the Fourth Amendment. And Count VI alleges a civil conspiracy based on an alleged agreement between the Defendant Officers and the Hospital Defendants to violate Plaintiff's constitutional rights under the Fourth Amendment. The remaining counts raise state-law *respondeat superior* (Count VII) and indemnification claims (Count VIII) against the City of Chicago.

The City Defendants move to dismiss Plaintiff's complaint under Rule 12(b)(6) on grounds that: (1) Plaintiff's complaint does not meet the federal pleading requirements under Rule 8 of the Federal Rules of Civil Procedure; (2) Plaintiff has failed to state a claim for false arrest, failure to intervene, and conspiracy; and (3) Plaintiff's derivative state-law claims must be dismissed for the failure to state an underlying constitutional claim. R. 27. The Hospital Defendants also move to dismiss the complaint under Rule 12(b)(6) on grounds that Plaintiff cannot plausibly plead that they conspired to illegally seize and unlawfully detain him by way of involuntary admission. R. 37.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a motion to dismiss, the Court accepts as true all well-pleaded facts in

3

the complaint and draws all reasonable inferences in the plaintiff's favor. *See Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 290 (7th Cir. 2016). Although the plaintiff need not plead "detailed factual allegations" to survive a motion to dismiss, mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

### I. HOSPITAL DEFENDANTS' EXHIBITS

Before turning to the Defendants' respective arguments in support of dismissal, the Court first notes that the Hospital Defendants attached four exhibits to their motion to dismiss: (1) the petition for involuntary admission (Exhibit A); (2) Plaintiff's alcohol test results (Exhibit B); (3) the inpatient certificate (Exhibit C); and (4) Plaintiff's application for voluntary admission (Exhibit D). R. 37 at 11-14.[3] The Hospital Defendants argue that the Court can consider these documents because Plaintiff has placed the facts and circumstances of his hospital admission directly at issue. *Id.* at 3. Further, the City Defendants, in their reply brief, likewise argue that the Court may consider the Hospital Defendants' exhibits with respect to their motion because they pertain to the same factual issues that they raised regarding Plaintiff's claims. R. 50 at 7. The Hospital Defendants and the City Defendants point to these

---

[3] The Hospital Defendants filed said exhibits under seal. R. 61.

exhibits in support of their respective arguments that Plaintiff cannot show that his civil rights were violated because they were acting in response to a report received from Plaintiff's brother that Plaintiff was suicidal. R. 37 at 3; R. 50 at 6; R. 61 at 2 (Exhibit A) ("[patient] call[ed] his brother and stat[ed] 'I've got a glock and I'm going to blow my brains out.'").

Generally, in deciding a motion to dismiss, the court may not consider evidence outside the pleadings without converting the motion into a Rule 56 motion for summary judgment. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); Fed. R. Civ. P. 12(d). One exception to the conversion rule is for matters of which the court may take judicial notice. *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022). The judicial notice exception is reserved for matters of the public record and facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* (citing Fed. R. Evid. 201(b)(2)). None of the parties argue that the Court may take judicial notice of the Hospital Defendants' exhibits, nor does the Court find that Plaintiff's medical records would qualify under this exception.[4]

This leaves the incorporation-by-reference doctrine. Under this exception to the conversion rule, courts may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim. *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). Out of the four documents attached to the Hospital Defendants' motion to dismiss, only

---

[4] Although Exhibit A includes a "Petition for Involuntary/Judicial Admission," it does not appear that the document was filed with the Circuit Court of Cook County, Illinois, or otherwise made part of the public record. R. 61 at 1-5. Rather, it appears the document was solely made part of Plaintiff's medical file. *Id.*; *see also* R. 42 at 2; R. 50 at 7.

5

one—the petition for involuntary admission (Exhibit A)—was mentioned in Plaintiff's complaint. The remaining exhibits (Exhibits B-D) do not fall within the purview of the incorporation-by-reference doctrine.

Accordingly, the petition for involuntary admission is the only document that the Court may consider in ruling on the Defendants' motions to dismiss. Even so, the Court "is not bound to accept the pleader's allegations as to the effect of the exhibit, but can independently examine the document and form its own conclusions as to the proper construction and meaning to be given to the material." *Burke v. 401 N. Wabash Venture, LLC*, 714 F.3d 501, 505 (7th Cir. 2013) (citations omitted). With this in mind, the Court now turns to the merits of the Defendants' respective arguments.

## II. RULE 8

At the outset, the City Defendants move to dismiss all counts against the Defendant Officers (Counts I through VI) on grounds that Plaintiff's complaint neither satisfies Rule 8's notice pleading requirements, nor the "personal involvement" requisite for § 1983 claims. R. 27 at 3-6. According to the City Defendants, Plaintiff inappropriately relies on "group pleading," a practice of collectively defining subgroups of defendants. *Id.*

"There is no 'group pleading' doctrine, *per se*, that either permits or forbids allegations against defendants collectively." *Robles v. City of Chi.*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019). That said, the City Defendants correctly note that liability under § 1983 "is premised on the wrongdoer's personal responsibility." *Kuhn v. Goodlow*, 678 F.3d 552, 555-56 (7th Cir. 2012). Rule 8, however, is "not so rigid that it requires a plaintiff, without the benefit of discovery, to connect every single alleged

6

instance of misconduct in the complaint to every single specific officer." *Gray v. City of Chi.*, No. 18 C 2624, 2019 WL 3554239, at *5 (N.D. Ill. Aug. 1, 2019) (internal quotation marks and citation omitted). Notice and plausibility remain the benchmarks. *Fulton v. Bartik*, 547 F. Supp. 3d 799, 810 (N.D. Ill. 2021). Group pleading is therefore permissible "so long as it provides notice to each defendant of the contours of the alleged deprivation and that he or she is alleged to have participated in it." *Id.* (citing *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009)).

Here, Plaintiff's allegations are sufficient to put the Defendant Officers on notice of the claims asserted against them. Plaintiff identifies each of the officers who are alleged to have knocked on his front door and entered his residence on December 16th. R. 1 ¶ 7. Although Plaintiff refers to Defendant Officers collectively as "defendants" in describing their actions after entering his residence, it is clear from the complaint that these allegations are directed at all of the Defendant Officers, as each of them is alleged to have been a member of a team that collectively acted to illegally seize and detain Plaintiff, through the use of excessive force, and unlawfully search his home. *See, e.g., Fulton*, 547 F.3d at 810 (quoting *Engel v. Buchan*, 710 F.3d 698, 710 (7th Cir. 2010)) ("Reading the complaint 'as a whole,' the individual defendants have notice 'regarding who is responsible for what,' especially because 'they are accused of acting jointly,' for either participating directly or indirectly via conspiracy or failing to intervene in particular deprivations."). Further, Plaintiff distinguishes between the allegations that pertain solely to the Defendant Officers

7

and those that equally apply to the Hospital Defendants by making explicit reference to the Hospital Defendants in the applicable allegations. *See* R. 1 ¶¶ 14, 42-44.

In sum, Plaintiff's factual allegations are not so vague that the Defendant Officers would not know the contours of the claims that they are each alleged to have taken part in somehow. Though Plaintiff will ultimately have to demonstrate that each Defendant Officer was personally responsible for his injuries, the failure to ascribe specific conduct to a specific officer is not fatal at this stage. *See Kuri v. City of Chi.*, No. 13 C 1653, 2014 WL 114283, at *7 (N.D. Ill. Jan. 10, 2014). The Court therefore declines to dismiss the complaint for use of group pleading.

### III.   PLAINTIFF'S FALSE ARREST CLAIM (COUNT I)

In Count I, Plaintiff asserts a Fourth Amendment false arrest claim under § 1983 against the Defendant Officers. He alleges that the Defendant Officers "illegally seized and/or falsely arrested" him when they drew their weapons and ordered him to put his hands up, handcuffed him, and transported him to Illinois Masonic for medical attention against his will. R. 1 ¶¶ 9, 11-13, 18.

The City Defendants first contend that Plaintiff has failed to state a claim for false arrest because the complaint is devoid of any allegations that he was arrested, charged with a crime, or subject to criminal judicial proceedings; he pleads only that he was involuntarily committed. R. 27 at 7. Though it is true that false arrest claims are predicated on there being an arrest, *see Braun v. Vill. of Palatine*, 56 F.4th 542, 548 (7th Cir. 2022) ("To prevail on a Fourth Amendment false-arrest claim, a plaintiff must show that there was no probable cause for his arrest."), and the Seventh Circuit has rejected analogizing a petition for civil commitment (as is the case here) to an

application for an arrest warrant, *Villanova v. Abrams*, 972 F.2d 792, 795 (7th Cir. 1992), Plaintiff's failure to plead the correct legal theory does not doom his claim. *See Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 802, 808 (7th Cir. 2014) ("it is factual allegation, not legal theories, that must be pleaded in a complaint"); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) ("the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal").

The Fourth Amendment protects against unreasonable seizures. U.S. Const. amend. IV. Though an arrest is the "archetypical 'seizure' of a person under the Fourth Amendment," *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 719 (7th Cir. 2013), a person can be unreasonably seized without being arrested. *Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 n.1 (N.D. Ill. 2014). A person is 'seized' under the Fourth Amendment "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 552 (1980). Indeed, the Seventh Circuit has held that a civil commitment is a type of seizure. *See Bruce v. Guernsey*, 777 F.3d 872, 875 (7th Cir. 2015) ("The Fourth Amendment of the Constitution governs mental-health seizures,"); *Villanova*, 972 F.2d at 795 ("A civil commitment is a seizure ..."). The Court will therefore analyze Count I as an unreasonable mental-health seizure claim.

"Like ordinary seizures, mental-health seizures comply with the Fourth Amendment if officers have probable cause, which exists 'only if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard.'" *Bruce*, 777 F.3d at 875-76 (quoting *Fitzgerald v. Santoro*, 707 F.3d

9

725, 732 (7th Cir. 2013)). "Generally speaking, a mental-health seizure is lawful if there is probable cause to believe that the person seized is a danger to herself or others." *Id.* at 876. The existence of probable cause thus serves as an "absolute defense to any § 1983 claim against a police officer" for an allegedly unreasonable seizure. *See Abbott*, 705 F.3d at 713-14; *Bruce*, 777 F.3d at 876-77, 879.

The City Defendants argue that Plaintiff cannot plausibly state a Fourth Amendment unlawful seizure claim because probable cause existed for the mental-health seizure. R. 27 at 7-8. They point to the Illinois Mental Health and Developmental Disabilities Code ("Illinois Mental Health Code"), 405 ILCS 5/3-600 *et seq.*, which outlines the procedures for involuntary admission on an inpatient basis. *See* 405 ILCS 5/3-601, 602, and 606. The City Defendants contend that Plaintiff has pleaded himself out of court by alleging that Byrne and Tselepis signed a petition for involuntary admission, as the petition would have been accompanied by a certificate attesting that Plaintiff had been examined and required immediate hospitalization. R. 27 at 8; *see also* 405 ILCS 5/3-601, 602. This, the City Defendants argue, demonstrates that there existed probable cause to seize Plaintiff. R. 27 at 8-9.

But, as the Seventh Circuit has explained, "the Fourth Amendment requires an *ex ante*, not an *ex post*, analysis." *Bruce*, 777 F.3d at 877-78 (rejecting defendant officer's argument that the fact that [the plaintiff] was ultimately admitted to the hospital and later involuntarily committed to a behavioral health center … demonstrate[d] that he had probable cause to seize her"). In other words, a

10

determination of probable cause requires looking at "the information that the officers had when the conduct occurred." *Saucier v. Katz*, 533 U.S. 194, 207 (2001).

Here, the Defendant Officers did not know that Plaintiff would be involuntarily admitted at the time that he was allegedly seized and, thus, they cannot rely on this allegation to argue that Plaintiff has pleaded himself out of court. Moreover, Plaintiff does not allege that he called the police or expressed any suicidal ideation or other mental health crisis that would justify the Defendant Officers' seizure at the time that it occurred; rather, he alleges that he was woken up by the Defendant Officers knocking at his door. Plaintiff's allegations that the Defendant Officers entered his apartment, drew their weapons, handcuffed him, and subsequently transported him to Illinois Masonic are sufficient to plausibly state a Fourth Amendment unreasonable seizure claim. *See Barrow*, 38 F. Supp. 3d (citing *Mendenhall*, 446 U.S. at 554) (circumstances that might indicate a seizure include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person …, or the use of language or tone of voice indicating that compliance with the officers' request might be compelled").

Nevertheless, the City Defendants ask the Court to look beyond the pleadings and make a factual finding concerning probable cause based on an alleged report of suicidal ideations. R. 50 at 6-8. As mentioned above, however, the Court is not bound to accept the City Defendants' allegations as to the effect of the petition for involuntary admission, *Burke*, 714 F.3d at 505, and declines to do so here where the contents of the petition appear to give rise to factual issues surrounding the leadup

11

to the alleged unlawful seizure. *See, e.g., Flores Delgado v. City of Chi.*, 547 F. Supp. 3d 824, 831 (7th Cir. 2021) ("the Court cannot definitively find at this stage that the video 'incontrovertibly contradicts' Plaintiff's allegations."). Such issues are more amenable for summary judgment. The City Defendants' motion to dismiss Count I is therefore denied.

### IV. FAILURE TO INTERVENE (COUNTS III AND IV)

In Counts III and IV, Plaintiff brings § 1983 failure-to-intervene claims against the Defendant Officers, alleging that the officers failed to take reasonable measures to intervene during both the illegal seizure (Count III) and during the use of excessive force (Count IV). R. 1 ¶¶ 28, 33.

To state a claim for failure to intervene, the plaintiff must allege that the officers (1) had reason to know there was a constitutional violation occurring, and (2) had a realistic opportunity to intervene to prevent the harm. *Lietzow v. Vill. of Huntley*, No. 17 C 5291, 2018 WL 6248911, at *5 (N.D. Ill. Nov. 29, 2018) (citing *Morfin v. City of East Chi.*, 349 F.3d 989, 1001 (7th Cir. 2003)).

The City Defendants argue that Plaintiff's complaint is devoid of any factual allegations that could plausibly state a claim for failure to intervene. R. 27 at 9-11. But Plaintiff need not allege specifically how the Defendant Officers failed to intervene to survive a motion to dismiss; rather, his allegations are sufficient "so long as the narrative suggests that [the Defendant Officers] could have acted to intervene but failed to do so." *Lietzow*, 2018 WL 6248911, at *5.

Here, Plaintiff alleges that all the Defendant Officers entered his residence without consent, pointed "AK-47 weapons at his head," and tightly handcuffed his

12

hands behind his back before transporting him to Illinois Masonic where he was involuntarily committed. Drawing all reasonable inferences in Plaintiff's favor, it is plausible that each Defendant Officer had the opportunity to intervene and prevent or halt the allegedly unconstitutional acts committed but failed to do so. Plaintiff's allegations that all the Defendant Officers were involved in the illegal seizure and the use of excessive force and that none of them intervened are sufficient to plausibly state a claim for failure to intervene. *See Lietzow*, 2018 WL 6248911, at *5.

Alternatively, the City Defendants argue that if Plaintiff's illegal seizure and excessive force claims fail under Rule 8, then so too do his failure to intervene claims. R. 27 at 11. But, as stated above, the complaint meets Rule 8's notice pleading requirements. Accordingly, the Court denies the City Defendants' motion to dismiss Counts III and IV.

### V. PLAINTIFF'S CONSPIRACY CLAIM (COUNT VI)

In Count VI, Plaintiff alleges that the Defendant Officers and the Hospital Defendants conspired to deprive him of his constitutional rights by "illegally seizing, falsely arresting[,] and illegally detaining him at the hospital for three days" knowing that they had no probable cause to do so. R. 1 ¶ 42.

To state a claim for conspiracy under § 1983, the plaintiff must allege facts from which the Court may reasonably infer that there was (1) an express or implied agreement among defendants to deprive the plaintiff of his constitutional rights, and (2) overt acts in furtherance actually deprive him of those rights. *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018); *Wightman v. Wauconda Twp. Highway Dep't*, No. 19 C 2344, 2021 WL 534668, at *6 (N.D. Ill. Feb. 12, 2021). Civil conspiracy claims

are not subject to a heightened pleading requirement; rather, "[i]t is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date." *Cusick v. Gualandri*, 573 F. Supp. 3d 1256, 1269 (N.D. Ill. 2021) (citation omitted); *see also Walker v. Thompson*, 288 F.3d 1005, 1007-008 (7th Cir. 2002) (explaining the complaint need only indicate the nature of the alleged conspiratorial agreement to "enable [the defendant] to prepare his defense or for the district court to determine whether the claim was within the ballpark of possibly valid conspiracy claims"). Further, "[u]nlike a typical § 1983 claim, conspiracy does not require that only state employees, acting under the color of state law, be involved." *Wightman*, 2021 WL 534668, at *6. Rather, non-state actors can be "roped in" so long as there was "sufficient state involvement in the constitutional deprivation." *Id.*

In this case, the complaint alleges that the Defendant Officers agreed to effect the unlawful seizure of Plaintiff when they arrived at his home on December 16, 2020, without a warrant, handcuffed him, and transported him to Illinois Masonic where he was involuntarily committed without probable cause. R. 1 ¶¶ 7, 11, 13-15, 42. Thus, "the parties involved, how they are connected, the general purpose of the agreement, [and] even the precise time and location it came together are all stated" in the complaint. *Love v. City of Chi.*, No. 09 C 3631, 2015 WL 2193712, at *10 (N.D. Ill. May 7, 2015). Such allegations are sufficient to state a § 1983 conspiracy claim against the Defendant Officers. *See, e.g., Gardunio v. Town of Cicero*, 674 F. Supp. 2d 976, 986 (N.D. Ill. 2009) (denying motion to dismiss where the complaint alleged the

14

defendant officers agreed to unlawful detain and arrest the plaintiff). The City Defendants' motion to dismiss Count VI is therefore denied.

As to the Hospital Defendants, however, Plaintiff does not plausibly state a conspiracy claim under § 1983. Indeed, there are no factual allegations from which this Court could reasonably infer that the Hospital Defendants were somehow tied to the conspiracy with the Defendant Officers. *See, e.g., Cichocki v. Foxx*, No. 20 C 2165, 2021 WL 1103347, at *5 (N.D. Ill. Mar. 23, 2021) (holding allegations insufficient to plausibly allege a civil conspiracy where plaintiff did not describe any conversations or interactions between the alleged co-conspirators). And the conclusory allegation that the Hospital Defendants "agreed to violate [Plaintiff's] constitutional rights," without any factual allegations to support such a claim, is not enough to suggest a conspiracy, much less plausibly allege one. *See Karageorge v. Urlacher*, No. 18 C 3148, 2019 WL 4735436, at *1 (N.D. Ill. Sept. 27, 2019) ("vague and conclusory allegations of a conspiracy are insufficient to sustain a plaintiff's burden of pleading that a private actor reached an agreement with state actors"). Plaintiff has therefore failed to state a § 1983 conspiracy claim against the Hospital Defendants.

Accordingly, the Court grants the Hospital Defendants' motion to dismiss, which challenges only Count VI as that is the only count alleged against them. Because Plaintiff alleges no other claims against the Hospital Defendants, the Court dismisses the Hospital Defendants as parties to this action. Plaintiff is granted leave to amend his complaint to state a claim for civil conspiracy under § 1983 against the Hospital Defendants if he can do so consistent with this Order and Rule 11 of the

Federal Rules of Civil Procedure. *See Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357-58 (7th Cir. 2015) (explaining that Rule 15's liberal standard for amending the pleadings requires a district court "to allow amendment unless there is good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend"); Fed. R. Civ. P. 15(a)(2).

### VI. PLAINTIFF'S STATE-LAW CLAIMS (COUNTS VII AND VIII)

Finally, the City Defendants argue that Plaintiff's state-law *respondeat superior* (Count VII) and indemnification claims (Count VIII) against the City of Chicago must be dismissed. R. 27 at 13. Their argument turns on the viability of Plaintiff's underlying constitutional claims. *Id*. But because the Court finds that Plaintiff's complaint meets Rule 8's pleading requirements and plausibly states federal constitutional claims under § 1983—save for Plaintiff's civil conspiracy claim—the City Defendants' argument fails. The City Defendants' motion to dismiss Counts VII and VIII is therefore denied.

### CONCLUSION

For the reasons stated above, the City Defendants' motion to dismiss, R. 27, is denied. As for the Hospital Defendants, their motion to dismiss, R. 37, is granted. The Hospital Defendants are dismissed as parties to this litigation as there remain no pending claims against them. Plaintiff is granted leave to amend his complaint by December 28, 2023.

Date: 11/28/2023

JEREMY C. DANIEL
United States District Judge

16